**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | No. CR10-8036-PCT-DGC |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Richard Self, ) | |
| Defendant. ) | |

Defendant Richard Self is charged with transportation of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1) and 2256, and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256. He has filed a motion to suppress all evidence obtained from search warrants executed at his home on February 8, 2010, and on his semi tractor-trailer truck on February 18, 2010. Doc. #47. The motion is fully briefed, and oral argument was held on November 10, 2010. For reasons that follow, the Court will deny the motion.

**I.    Background.**

On January 27, 2010, Special Agent Christopher D. Shrable of Immigration and Customs Enforcement (ICE) presented a 59-paragraph affidavit to United States Magistrate Judge Mark Aspey. On the basis of the affidavit, Judge Aspey signed a search warrant authorizing ICE to search Defendant's house located at 5750 North Desert Pine Road in Rimrock, Arizona. Rimrock is a small community in Northern Arizona of about 3,000 people. The search warrant authorized agents to seize computers, computer devices, papers,

and other materials that may be related to the possession of child pornography. Doc. #47-1 at 46-49.

The search warrant was executed on February 8, 2010. Defendant was not present. Agents found computer generated printouts containing child pornography, several hundred pages of stories concerning sexual exploitation of children, and two older computers that did not appear to contain child pornography. Agents learned that Defendant was on a cross-country work trip in his tractor-trailer with his wife.

A second search warrant was obtained from Judge Aspey for the tractor-trailer and was executed on February 18, 2010. Agents found two laptop computers and several related storage devices, including CDs and thumb drives, in the bunk area of the tractor-trailer. The storage devices and one of the laptops contained child pornography.

Defendant argues that the search warrant for his house lacked probable cause because the evidence contained in Agent Shrable's affidavit was stale. Defendant contends that the search of the tractor-trailer, which followed and was based in part on the illegal search of the house, must be suppressed as fruit of the poisonous tree.

**II.   Legal Standards.**

To be valid under the Fourth Amendment, search warrants must be supported by probable cause. In assessing the existence of probable cause, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed." *Id*. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960) (ellipses and brackets omitted)). The Court must remember that a "fair probability" does not amount to "certainty or even a preponderance of the evidence," and that the Court must not "flyspeck" the affidavit through *de novo* review. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc). The magistrate judge's determination "should be paid great deference." *Gates*, 462 U.S. at 236.

**III.   Analysis.**

    **A.   Agent Shrable's Affidavit.**

"'All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath.'" *Gourde*, 440 F.3d at 1067 (quoting *United States v. Anderson*, 453 F.2d 174, 175 (9th Cir. 1971)). The information that follows is taken from the affidavit submitted by Agent Shrable to Magistrate Judge Aspey. *See* Doc. #47-1.

Agent Schrable is a Special Agent with ICE, currently assigned to investigate crimes relating to child exploitation and child pornography. Agent Schrable has received training in the area of child pornography. Doc. 47-1 at 9. In addition to formal training in the investigation of crimes involving the sexual exploitation of children, Agent Schrable owns his own computer, has personal knowledge of the operation of computers, and has accessed the Internet since 1990. *Id*. at 18.

Agent Schrable explained that electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they may be recoverable months or years later using readily-available forensic tools. He further explained that when a person deletes a file on a home computer, the data contained in the file does not necessarily disappear. Rather, it remains on the hard drive until it is overwritten by new data. Therefore, deleted files or remnants of deleted files may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file – for long periods of time before they are overwritten. In addition, a computer's operating system may keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet director or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. *Id*. at 21-22.

On November 5, 2008, the ICE Cyber Crimes Center received information concerning a website that was advertising access to child pornography for a monthly fee. The website

1 was known as "DreamZone CP." On November 6, 2008, an ICE agent accessed the website and verified that it contained child pornography. The agent also verified that the website offered access only to members who paid a monthly fee. *Id.* at 22-23.

The ICE agent completed an undercover transaction at the DreamZone website. The access fee was paid and the ICE agent was granted member-only access to the site. The agent received a username and password for accessing the site. The username was the email address the agent used during the transaction, and the password appeared to be randomly generated. Using the username and password, the agent was permitted to access child pornography on the DreamZone website. The agent found that the website contained a large number of child pornographic images organized into various galleries. *Id*. at 23-24.

On or about December 16, 2008, ICE obtained a federal search warrant for the DreamZone website. The warrant succeeded in obtaining access logs and the entire content of the member-restricted website. The information revealed that an email address of richardrimrock@AOL.com had been used to access the DreamZone website using the Internet Protocol ("IP") address 75.217.66.167. The information further revealed that the customer accessing the site from this IP addressed had downloaded numerous visual depictions of minors engaged in sexually explicit conduct. *Id.* at 29-30.

The downloads, which were made on November 18, 2008, included a video of a nude prepubescent female in a bathtub performing oral sex on an adult male, the same child laying on her side and being anally penetrated by an adult male, and similar pornographic images. Images downloaded by the user at richardrimrock@AOL.com also included a video of a nude prepubescent female performing oral sex on a dog. *Id*. at 30.

On or about January 28, 2009, ICE issued an administrative subpoena to America Online for the email account of richardrimrock@AOL.com. On July 30, 2009, America Online responded with information that the account holder was Richard Self at P.O. Box 144, Rimrock, Arizona, telephone number 982-567-5718. *Id.* at 31.

On January 28, 2009, ICE issued another administrative subpoena to Verizon Wireless for IP address 75.217.66.167. On or about February 13, 2009, Verizon Wireless identified

- 4 -

1    the owner of the account as Richard Self at P.O. Box 144, Rimrock, Arizona, telephone
2    number (928) 567-5718. The information stated that Richard Self had owned the IP address
3    since April of 2008. *Id.*
4        On or about May 26, 2009, ICE examined an Arizona Motor Vehicle Division
5    ("MVD") data base for records concerning Richard Self. The database identified a Richard
6    Self, born on July 11, 1949, with a residential address of 5750 North Desert Pine Road,
7    Rimrock, Arizona. *Id*. at 32. Thus, the subpoena for the email address, the subpoena for the
8    IP address, and the check of the MVD records all identified a Richard Self in Rimrock,
9    Arizona.
10       On November 15, 2009, ICE agents conducted surveillance at the 5750 North Desert
11   Pine Road address. Agents observed a Ford pick-up truck with Arizona License Place
12   047-NED. A check of the Arizona Department of Transportation database revealed that the
13   truck was registered to Richard Self at 5750 North Desert Pine Road, Rimrock, Arizona.
14   *Id*. at 32.
15       On December 11, 2009, ICE issued another administrative subpoena to AOL to
16   confirm the subscriber information for email account at richardrimrock@AOL.com. On
17   December 22, 2009, AOL confirmed that the account holder was still Richard Self at P.O.
18   Box 144, in Rimrock, Arizona. On December 23, 2009, ICE again queried the MVD
19   database and again confirmed that Richard Self still reported his home address as 5750 North
20   Desert Pine Road, Rimrock, Arizona. *Id.* at 31-32.
21       On the basis of this information, Agent Schrable submitted his affidavit on January 27,
22   2010, stating his belief that Richard Self, who resided at the address in Rimrock, Arizona,
23   had paid a member fee and accessed the DreamZone website on November 18, 2008, to
24   download approximately 106 images of child pornography. Having confirmed that the
25   address was Richard Self's residence and that the truck in front of the address was registered
26   to Richard Self, Agent Schrable stated his opinion that there was probable cause to believe
27   that a person within the residence was in possession of child pornography. *Id,* at 32-33.
28

1    Agent Schrable provided the following additional information in support of his
2 conclusion.  On the basis of his previous investigative experience related to child
3 pornography, including investigation of subjects who subscribe to websites offering access
4 to child pornography, he has learned that individuals who subscribe to such websites are
5 often individuals who have a sexual interest in children and images of children, and who
6 download images and videos of child pornography.  Based on his training and experience in
7 child pornography, and the training and experience of other law enforcement officers with
8 whom he had discussions, Agent Schrable stated there are certain characteristics common to
9 individuals involved in the receipt and collection of child pornography.  These individuals
10 may receive sexual gratification, stimulation, and satisfaction from viewing children engaged
11 in sexual activity or in sexually suggestive poses.  Such individuals may collect sexually
12 explicit or suggestive materials in a variety of media, and often use these images for their
13 own sexual arousal and gratification.  Such individuals often maintain their collections in a
14 digital or electronic format in a safe, secure and private environment, such as a computer.
15 The collections are often maintained for several years and are kept close by, usually at the
16 collector's residence, to enable the individual to view the collection, which is valued highly.
17 *Id.* at 33-35.

### B. The Affidavit Established Probable Cause.

19    Considering the totality of the circumstances, the Court concludes that Magistrate
20 Judge Aspey had a substantial basis for concluding that there was a fair probability that
21 evidence of child pornography would be found in Defendant's house.  The affidavit provided
22 considerable detail concerning the investigation conducted by ICE, including the date on
23 which the investigation commenced, how the DreamZone site was located and accessed, and
24 the nature of images found on the site.  The affidavit confirmed that the site contained child
25 pornography.  The affidavit explained that a subpoena of the DreamZone website had
26 procured information concerning users of the website.  This information revealed that a fee-
27 paying member using the email address of richardrimrock@AOL.com and the IP address of
28 75.217.66.167 had downloaded 106 images of child pornography on November 18, 2009.

1       The affidavit further explained that through administrative subpoenas ICE was able
2  to determine that the email address richardrimrock@AOL.com was registered to a Richard
3  Self in Rimrock, Arizona, and that the IP address 75.217.66.167 was also registered to
4  Richard Self in Rimrock.  Search of an Arizona MVD data base confirmed that a Richard
5  Self resided in Rimrock at 5750 North Desert Pine Road.  Subsequent surveillance of that
6  location identified a Ford truck registered to Richard Self at that Rimrock street address.
7  This information clearly provided probable cause to believe that Richard Self in Rimrock,
8  Arizona had downloaded the 106 images on November 18, 2008.

9       Defendant's primary argument is that the evidence in the affidavit was stale by
10 January 27, 2010, some 14 months after the images were downloaded to Defendant's IP
11 address.  Defendant contends that there was no reasonable basis for believing that the
12 downloaded child pornography was still in his possession or would be located through a
13 search of his residence and computer.

14      As the Ninth Circuit repeatedly has recognized, however, expert opinion may be
15 presented in a search warrant affidavit and may provide valuable context for conducting the
16 "fair probability" inquiry.  *See Gourde*, 440 F.3d at 1073 ("The details provided on the use
17 of computers by child pornographers and the collector profile strengthen [the inference that
18 child pornography will still be in the collector's possession] and help provide context for the
19 fair probability" inquiry.) (internal quotations and citations omitted); *United States v. Hay*,
20 231 F.3d 630, 636 (9th Cir. 2000) (reasoning that the collector profile "form[ed] the basis
21 upon which the magistrate judge could plausibly conclude that those files were still on the
22 premises"); *United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990) ("It is well
23 established that expert opinion may be presented in a search warrant affidavit."). Agent
24 Shrable's expert opinion, based on his training and experience and the training and
25 experience of other ICE agents, established that child pornography images downloaded to
26 a computer can remain for an extended period of time, even years.  This is true even if the
27 images are only viewed on the Internet or are downloaded and later deleted by the computer
28 user.  The reliability of such opinions has been acknowledged by the Ninth Circuit:

> Thanks to the long memory of computers, any evidence of a crime was almost certainly still on [defendant's] computer, even if he had tried to delete the images. FBI computer experts, cited in the affidavit, stated that even if graphic image files have been deleted these files can easily be restored. In other words, [defendant's] computer would contain at least the digital footprint of the images.

*Gourde*, 440 F.3d at 1071 (quotation marks, ellipsis, and brackets omitted); *see also United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) (holding that the nature of the crime involving child pornography, as set forth in the affidavit, "provided 'good reason[]' to believe the computerized visual depictions downloaded by Lacy would be present in his apartment when the search was conducted ten months later").

Agent Shrable also provided expert opinion that collectors of child pornography rarely dispose of their sexually explicit materials. The Ninth Circuit has relied on similar law enforcement expertise to note that collectors of child pornography "act like 'pack rats' because they have difficulty obtaining images of child pornography. As such, they are inclined to download and keep such images for a long period of time, and they rarely, if ever, dispose of their sexually explicit materials. This profile tracks the collector profiles that supported a finding of probable cause in other cases in this circuit and others." *Gourde*, 440 F.3d at 1072 (quotation marks omitted); *see also Lacy*, 119 F.3d at 746 ("[T]he affiant explained that collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes."); *United States v. Martin*, 426 F.3d 68, 75 (2d Cir. 2005) (same).

Given the expert opinions provided in Agent Shrable's affidavit, Judge Aspey reasonably found a fair probability that child pornography images would still be located on Defendant's computer 14 months after he downloaded them from the DreamZone website. Although this period is longer than the ten months addressed by the Ninth Circuit in *Lacy* and the four months addressed in *Gourde*, the durability of pornographic images downloaded to a computer, when combined with the propensity of collectors to retain the material indefinitely, supported Judge Aspey's conclusion. Other courts have reached similar

conclusions. *See United States v. Morales-Aldahondo*, 524 F.3d 115, 118 (1st Cir. 2008) (information not stale despite being years old because special agent attested that those who download child pornography tend to retain images for years and use computers to augment and store collected images); *United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006) (information not stale despite being years old because pedophiles are likely to hoard images of child pornography in their homes for extended periods of time).

Defendant relies heavily on the Ninth Circuit's 1991 decision in *Weber* to argue that Agent Shrable's affidavit failed to establish probable cause, but *Weber* concerned hard-copy child pornography sent through the mail, not Internet child pornography downloaded to computers. 923 F.2d at 1340. *Weber* thus lacked the significant long-term retention capacity of computers, a factor that contributed significantly to the Ninth Circuit's finding of probable cause in *Gourde*. 440 F.3d at 1071 (stating that "these images were almost certainly retrievable from his computer if he had ever received or downloaded them").

The Court concludes that the evidence contained in Agent Shrable's affidavit on January 27, 2010 was not stale, and that Judge Aspey reasonably found a fair probability that child pornography would be located at Defendant's residence. The Court therefore will not suppress evidence found during the February 8, 2010 search of the house.

### C. Search of the Tractor-Trailer.

Defendant argues that the February 18, 2010 search of his tractor-trailer should be suppressed as fruit of the poisonous tree – the poisonous tree being the illegal search of his house. Defendant does not argue independently that the search warrant for his tractor-trailer lacked probable cause. Because the Court concludes that the search of the house was proper, Defendant has provided no basis for suppressing the search of his tractor-trailer.

### IV. Good Faith Exception.

The Supreme Court has held that evidence obtained under a facially valid search warrant that is later found to be invalid is nonetheless admissible if the executing officers acted in good faith and had an "objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984). For all of the reasons outlined

1 above, the Court concludes that objectively reasonable law enforcement officers would find
2 probable cause to believe that Defendant was in possession of child pornography on the date
3 his house was searched, and that the search therefore was valid.  The investigation had
4 pinpointed Richard Self in Rimrock, Arizona as the individual who downloaded child
5 pornography on November 18, 2008.  The expertise and training of the law enforcement
6 officers confirmed that collectors of child pornography rarely dispose of it, and that images
7 downloaded to a computer persist for years even when disposal is attempted.  Because the
8 agents were about to search the physical residence where Richard Self resided, they could
9 believe, on an objectively reasonable basis, that child pornography would be found.  Thus,
10 even if the Court were to conclude that the evidence in this case was too stale to support
11 probable cause, the motion to suppress would be denied on the basis of the good faith
12 exception.

13 **IT IS ORDERED** that Defendant's motion to suppress (Doc. #47) is **denied**.
14 Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to commence on
15 October 14, 2010 for a total of __ days.

16 DATED this 12th day of November, 2010.

David G. Campbell
United States District Judge